# ORIGINAL

*no answer*
*cc: Hg*

Of Counsel:
HISAKA YOSHIDA & COSGROVE

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 2 9 2007

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

STEVEN K. HISAKA          1773-0
GAIL Y. COSGROVE          3011-0
KUNIO KUWABE              4798-0
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 3000
Honolulu, Hawaii  96813
Telephone No.:   (808) 523-0451
Facsimile No.:   (808) 524-0422
E-Mail:  shisaka@objectionsustained.com
         gcosgrove@objectionsustained.com
         kkuwabe@objectionsustained.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| GAIL H. AWAKUNI and JOHN OKITA, on behalf of themselves and all others similarly situated in the State of Hawai'i,<br><br>          Plaintiffs,<br><br>vs.<br><br>AU OPTRONICS CORP.; AU OPTRONICS CORP. AMERICA; CHI MEI OPTOELECTRONICS CORPORATION; CMO JAPAN CO., LTD.; CHI MEI OPTOELECTRONICS USA, INC.; CHUNGHWA PICTURE TUBES, LTD.; HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONIC DEVICES (USA), INC; HITACHI AMERICA, LTD.; INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD; INTERNATIONAL DISPLAY TECHNOLOGY USA, INC.; IPS ALPHA TECHNOLOGY, LTD.; LG.PHILIPS LCD CO., LTD.; | CIVIL ACTION NO. CV07-00122 (HG/LEK)<br>(Class Action Complaint)<br><br>FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS; EXHIBIT "A" |

LG.PHILIPS LCD AMERICA,
INC.; NEC ELECTRONICS
CORPORATION; NEC ELECTRONICS
AMERICA, INC.; NEC LCD
TECHNOLOGIES, LTD.; SAMSUNG
ELECTRONICS COMPANY LTD.;
SAMSUNG ELECTRONICS AMERICA,
INC.; SEIKO EPSON
CORPORATION; EPSON IMAGING
DEVICES CORPORATION; SHARP
CORPORATION; SHARP
ELECTRONICS CORPORATION;
TOSHIBA CORPORATION; TOSHIBA
AMERICA INC.; TOSHIBA
MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD.; and
JOHN DOES 1-100

   Defendants.

---

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Gail H. Awakuni and John Okita, hereby bring this action on behalf of themselves and all other similarly situated persons and entities who indirectly purchased Thin-Film Transistor Liquid Crystal Displays ("LCD") and products containing LCD during a period beginning no later than January 1, 2002, and continuing until the present.  Plaintiffs seek federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and damages and other relief from the LCD manufacturers listed above ("Defendants") for violations of Chapter 480 of Hawai'i Revised Statute (H.R.S.) §§ 480-1, *et seq.*  Plaintiffs, upon personal knowledge as to their own acts

2

and status, and upon information and belief as to all other matters, allege the following:

## INTRODUCTION

1.   This case arises out of a long-running conspiracy extending from January 1, 2002 and continuing until the present (the "Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing prices, allocating market share, and committing other unlawful practices designed to inflate the prices of LCD and products containing LCD sold indirectly to Plaintiffs and other purchasers throughout the United States, including in Hawai'i.  Plaintiffs bring this Class Action pursuant to H.R.S. §§ 480-1, *et seq.*

2.   Defendants and their co-conspirators formed an international cartel to illegally restrict competition in the LCD market, targeting and severely burdening consumers in Hawai'i.  During the Class Period, the conspiracy affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including Hawai'i.  Defendants' conspiracy included communications and meetings in which Defendants agreed to eliminate competition and fix the prices and allocate markets for LCD.

3.   The charged combination, and conspiracy consisted of a continuing agreement, understanding, and concert of action among

3

Defendants and their co-conspirators, the substantial terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases of LCD in Hawai'i.

4.    The acts by Defendants in furtherance of the conspiracy included the following wrongful conduct and horizontal agreements:

(a)    participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to fix prices for LCD;

(b)    participating in meetings and conversations in which Defendants and their co-conspirators allocated markets and customers for LCD;

(c)    participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to refrain from engaging in competitive bidding or to submit complementary and non-competitive bids for particular contracts to supply LCD and products containing LCD to various consumers;

(d)    exchanged sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e)    issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f)    facilitating, effectuating, implementing, monitoring, and

4

concealing the contract, combination,
and conspiracy to raise the prices of
LCD sold.

### JURISDICTION & VENUE

5.    Plaintiffs bring this class action pursuant to H.R.S

§§ 480-1, *et seq.*

6.    This Complaint is also filed under Section 16 Clayton

Act, 15 U.S.C. § 26 to enjoin Defendants, and their officers,

agents, employees, or representatives from engaging in the

unlawful contract, combination, and conspiracy in restraint of

trade or commerce of LCD.

7.    This Court has subject matter jurisdiction pursuant to

28 U.S.C. § 1332.  The matter in controversy exceeds $5,000,000

exclusive of interest and costs when the claims of individual

class members are aggregated, and is between citizens of

different states. Venue is proper in the United States District

Court for the District of Hawai'i pursuant to 15 U.S.C. § 15 and

§ 22 and 28 U.S.C. § 1391, as the Defendants reside, transact

business or are found within this District, and/or a substantial

part of the events giving rise to the Plaintiffs' claims arose

in this District.

8.    This Court has subject matter jurisdiction pursuant to

28 U.S.C. § 1331 by virtue of Plaintiffs' injunctive relief

claims brought under the Clayton Act, 15 U.S.C. § 26.

Jurisdiction is also proper under 28 U.S.C. § 1367 as all other

claims arise from the same case or controversy as the Clayton Act claim.

9.    Personal jurisdiction comports with due process under the United States Constitution and Hawai'i's long-arm statutes.

10.    Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

    (a)    transacted business in Hawai'i;

    (b)    contracted to supply or obtain services or goods in Hawai'i;

    (c)    availed themselves intentionally of the benefits of doing business in Hawai'i;

    (d)    produced, promoted, sold, marketed, and/or distributed their products or services in Hawai'i and, thereby, have purposefully profited from their access to Hawai'i's markets;

    (e)    caused tortious damage by act or omission in Hawai'i;

    (f)    caused tortious damage in Hawai'i by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

    (g)    committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did

6

cause damage) in Hawai'i to Plaintiff and class members while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(h)  engaged in a conspiracy with others doing business in Hawai'i that caused tortious damage in such jurisdiction; and

(i)  otherwise had the requisite minimum contacts with Hawai'i such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

11.  Plaintiffs Gail H. Awakuni and John Okita are citizens and residents of Hawai'i.  In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiffs' claims, occurred within Hawai'i, including, among other things, the indirect sale of LCD to Plaintiffs and other members of the class at supra-competitive prices.

12.  As a result of the manufacture, distribution, delivery and sale of LCD products to indirect purchasers within Hawai'i, Defendants, directly or through their subsidiaries, affiliates or agents, obtained the benefits of the laws of Hawai'i and the markets of Hawai'i for their products.

## PARTIES

### A.    Plaintiffs

13.    Plaintiff Gail H. Awakuni is a citizen and resident of Hawai'i.  During the time period covered in this Complaint, Plaintiff indirectly purchased LCD from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for LCD and was injured by reason of the illegal conduct alleged herein.

14.    Plaintiff John Okita is a citizen and resident of Hawai'i.  During the time period covered in this Complaint, Plaintiff indirectly purchased LCD from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for LCD and was injured by reason of the illegal conduct alleged herein.

### B.    Defendants

15.    Defendant AU Optronics Corporation is a Taiwanese corporation with its principal place of business at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. Defendant AU Optronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

8

16.    Defendant AU Optronics Corporation America is a wholly owned subsidiary of Defendant AU Optronics Corporation and is incorporated in California with its principal place of business at 9720 Cypresswood Drive, Suite 241, Houston, Texas 77070.  Defendant AU Optronics Corporation America produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.  Defendants AU Optronics Corporation America and AU Optronics Corporation are referred to collectively as "AU Optronics."

17.    Defendant Chi Mei Optoelectronics Corporation is a Taiwanese corporation with its principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Park, Tainan, 74147 Taiwan, R.O.C.  Defendant Chi Mei Optoelectronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

18.    Defendant CMO Japan Co., Ltd. is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics Corporation with its principal place of business at Nansei-Yaesu Bldg. 4F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant CMO Japan Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

9

19.    Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics Corporation and is incorporated in Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110.  Defendant Chi Mei Optoelectronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.  Defendants Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Corporation are referred to collectively as "Chi Mei Optoelectronics".

20.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese corporation with its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan, R.O.C. Defendant Chunghwa produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

21.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan.  Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

22.    Defendant Hitachi Displays, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. with its principal place of business

10

at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku, Tokyo 101-0022 Japan.  Defendant Hitachi Displays, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

23.  Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned subsidiary of Hitachi, Ltd. With its principal place of business at 575 Maudlin Road, Greenville, South Carolina, 29607. Defendant Hitachi Electronic Devices (USA), Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

24.  Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005.  Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.  Defendants Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi Displays, Ltd. and Hitachi, Ltd. are referred to collectively as "Hitachi".

25.  Defendant International Display Technology Co., Ltd. is a wholly owned Japanese subsidiary of Chi Mei Optoelectronics with its principal place of business at Nansei Yaesu Bldg., 3F,

11

2-2-10, Yaesu, Chuo-ku, Tokyo 104-0028 Japan.  Defendant
International Display Technology Co., Ltd. produced, promoted,
sold, marketed, and/or distributed LCD to consumers throughout
the United States, including in Hawai'i, during the Class
Period.

26.   Defendant International Display Technology USA, Inc.
is a wholly owned subsidiary of International Display Technology
Co., Ltd. and is incorporated in California with its principal
place of business at 101 Metro Drive, Suite 510, San Jose,
California 95110.  Defendant International Display Technology
USA, Inc. produced, promoted, sold, marketed, and/or distributed
LCD to consumers throughout the United States, including in
Hawai'i, during the Class Period.  Defendants International
Display Technology USA, Inc. and International Display
Technology Co., Ltd. are referred to collectively as "IDTech".

27.   Defendant IPS Alpha Technology, Ltd. ("IPS Alpha") is
a wholly owned subsidiary of Hitachi, Ltd., with its principal
place of business at 3732, Hayano, Mobara-shi, Chiba 297-0037
Japan.  It was created as a joint venture of Hitachi, Ltd.,
Toshiba Corporation and Matsushita Electric Industrial Co, Ltd.
Defendant IPS Alpha produced, promoted, sold, marketed, and/or
distributed LCD to consumers throughout the United States,
including in Hawai'i, during the Class Period.

28.   Defendant LG.Philips LCD Co., Ltd. is incorporated in

12

South Korea with its principal place of business at 20 Yoido-
dong, Youngdungpo-gu, Seoul 150-721 South Korea.  Defendant
LG.Philips LCD Co., Ltd. produced, promoted, sold, marketed,
and/or distributed LCD to consumers throughout the United
States, including in Hawai'i, during the Class Period.

29.    Defendant LG.Philips LCD America, Inc. is a wholly
owned subsidiary of LG.Philips LCD Co., Ltd. and is incorporated
in California with its principal place of business at 150 East
Brokaw Road, San Jose, California 95112.  Defendant LG.Philips
LCD America, Inc. produced, promoted, sold, marketed, and/or
distributed LCD to consumers throughout the United States,
including in Hawai'i, during the Class Period.  Defendants
LG.Philips LCD America, Inc. and LG.Philips LCD Co., Ltd. are
collectively referred to as "LG.Philips".

30.    Defendant NEC Electronics Corporation is incorporated
in Japan with its principal place of business at 1753
Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668 Japan.
Defendant NEC Electronics Corporation produced, promoted, sold,
marketed, and/or distributed LCD to consumers throughout the
United States, including in Hawai'i, during the Class Period.

31.    Defendant NEC Electronics America, Inc. is a wholly
owned subsidiary of NEC Electronics Corporation and is
incorporated in California with its principal place of business
at 2880 Scott Boulevard, Santa Clara, California 95050.

Defendant NEC Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

32.    Defendant NEC LCD Technologies, Ltd. is a Japanese corporation with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8666 Japan. Defendant NEC LCD Technologies, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period. Defendants NEC LCD Technologies, Ltd., NEC Electronics America, Inc. and NEC Electronics Corporation are referred to collectively as "NEC".

33.    Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250, 2-ga, Taepyung-ro Chung-gu, Seoul, South Korea. Defendant Samsung Electronics Company, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

34.    Defendant Samsung Electronics America, Inc. is incorporated in New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Defendant Samsung Electronics America, Inc. produced, promoted,

14

sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period. Defendants Samsung Electronics America, Inc. and Samsung Electronics Company, Ltd. are collectively referred to as "Samsung".

35. Defendant Seiko Epson Corporation is a Japanese corporation with its principal place of business at 3-3-5 Owa, Suwa, Nagano 392-8502 Japan. Defendant Seiko Epson Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

36. Defendant Epson Imaging Devices Corporation is a Japanese corporation with its principal place of business at 6925 Toyoshina Tazawa, Azumino-Shi, Nagano, Japan. Defendant Epson Imaging Devices Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

37. Defendant Sharp Corporation is a Japanese corporation with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522 Japan. Defendant Sharp Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

38. Defendant Sharp Electronics Corporation is a wholly

15

owned subsidiary of Sharp Corporation and is incorporated in New York with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430. Defendant Sharp Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period. Defendants Sharp Electronics Corporation and Sharp Corporation are referred to collectively as "Sharp".

39.    Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan. Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period.

40.    Defendant Toshiba America, Inc. is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020. Defendant Toshiba America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in Hawai'i, during the Class Period. Defendant Toshiba America, Inc. and Toshiba Corporation are referred to collectively as "Toshiba".

41.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a Japanese joint venture between Toshiba and Matsushita

with its principal place of business at Rivage Shinagawa, 1-8 Konan, 4-chome, Minato-ku, Tokyo 108-0075 Japan.  Defendant Toshiba Matsushita Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including in Hawai'i, during the Class Period.

42.    Whenever reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the corporation's management, direction, control, or business affairs.  Moreover, Defendants acted as each other's agents or joint venturers with respect to their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as its parent company's agent for its parent's United States LCD sales.

43.    The acts charged in this Complaint were done by the aforesaid Defendants and were ordered and performed by the aforesaid Defendants' officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of said Defendants' business or affairs.

## ADDITIONAL DEFENDANTS

44.    As additional information may come to light,

17

Plaintiffs reserve the right to add other Defendants as they become known to them.

## CO-CONSPIRATORS

45.   Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiffs, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

46.   The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants named herein as JOHN DOES 1 through 100 are unknown to Plaintiffs at this time, and are therefore sued by such fictitious names.   Plaintiffs will amend this complaint to allege the true names and capacities of JOHN  DOES 1 through 100 when they become known to Plaintiffs.   Each of JOHN DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

47.   The acts charged in this Complaint as having been done by Defendants and the JOHN DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

48.   This action is brought by Plaintiffs on behalf of themselves, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class ("the Class").  In particular, Plaintiff asserts that a class action is appropriate under Rule 23(b)(3).

49.   The Class is defined as:

> All persons residing in Hawai'i who
> indirectly purchased LCD or products
> containing LCD manufactured and sold by one
> or more of the Defendants during the Class
> Period.  The class of indirect purchasers of
> these products includes consumers and
> businesses who or which purchased LCD and/or
> products containing LCD.  Excluded from the
> Class are: all federal, state, or local
> governmental entities; Defendants'
> subsidiaries and affiliates; all persons who
> purchased LCD directly from any Defendant or
> from any other manufacturer of LCD.

50.   Although the exact size of the Class is unknown, the total number of Class members is in the thousands as most Hawai'i consumers have purchased LCD and/or products containing LCD.  Based upon the nature of the trade and commerce involved, joinder of all Class members would be impracticable.

51.   Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no conflict with any other Class member and have retained competent counsel

experienced in class action and antitrust litigation.

52. Common questions of law and fact exist, including:

(a) whether Defendants conspired with each other and others to fix, raise, stabilize or maintain the prices of LCD;

(b) whether Defendants' acts were unfair or deceptive;

(c) whether the combination or conspiracy caused the prices of LCD and products containing LCD to be higher than they would have been in the absence of Defendants' conduct;

(d) the operative time period for the conspiracy;

(e) whether Defendants' conduct caused injury to the business or property of Plaintiffs and the Class members, and if so, the appropriate measure of damages;

(f) whether Defendants' conduct violated H.R.S. §§ 480-1, *et seq.*;

(g) whether Defendants actively concealed the violation alleged herein; and

(h) the appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class members and predominate over any questions affecting only individual Class members.

53. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described

herein.  The class action vehicle provides an efficient method for enforcement of the rights of Plaintiffs and the Class members, and such litigation can be fairly managed.  Plaintiffs know of no unusual problems of management or notice.

54.   It is desirable for the claims of the Plaintiffs and Class members to be consolidated into a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of Hawai'i.

55.   The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure.

## FACTUAL ALLEGATIONS

56.   LCD is a thin, flat display device consisting of pixels aligned in front of a reflector or source of light.  An LCD generally consists of a mask of colored pixels and a layer of liquid crystal solution sandwiched between two panes of polarized glass.  When an electric current is passed through the liquid crystals, the crystals react, creating electric fields.  By manipulating the state of liquid crystals using electrical charges, the liquid crystals act like tiny shutters, opening or closing in response to the stimulus, thereby allowing light to pass through the colored pixels.  As a result, the LCD is illuminated, thus creating an image.

57.   LCD technology was introduced during the early 1970s;

however, they were used commercially for laptop computer screens during the late 1980s.  Today, LCD is used in a variety of electronic products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players.

58.    The LCD market is conducive to the kind of anticompetitive practices alleged in this Complaint.  The market is oligopolistic, is characterized by high manufacturing costs, and has technological barriers to entry.  The high barriers to entry are due to the capital-intensive nature of the display industry and the high volumes of production required to achieve economies of scale.

59.    According to reports, the worldwide market for LCD panels was worth $53 billion in 2004.  Other estimates suggest that the market is worth approximately $70 billion.  Most LCD panels are manufactured in Taiwan and South Korea.  For the first quarter of this year, Taiwan accounted for 52.2% of the LCD panel shipments, while South Korea had a 37.4% share.  Last year, South Korea led with a 48.8% share against Taiwan's 41.8% share.

60.    LG.Philips and Samsung have consistently been the industry's leading manufacturers.  In 2005, LG.Philips captured a 21.4% market share of LCD panel production sized ten inches or larger, edging out Samsung, which had a 20.9% market share.

Following closely behind were AU Optronics with 14.5%, Chi Mei
Optoelectronics with 11.8%, and Chunghwa Picture Tubes with 7.3%.
Thus far in 2006, however, Samsung appears to have overtaken
LG.Philips as the largest manufacturer of LCD panels—a result of
the joint venture operation with SONY to form S-LCD Corp.  Trailing
close behind is AU Optronics.  With its acquisition of Quanta
Display in 2006, the company's estimated market share rises to
approximately 20.2%, according to industry experts.

   61.    Prior to the Class Period, LCD prices in the United
States decreased significantly.  New competitors entered the LCD
market during this period.  Moreover, the increased
manufacturing capacity resulting from newly constructed advanced
generation factories and efficiency in production equipment and
processes contributed to these price declines.  The LCD
manufacturers saw their profit margins squeezed from falling
average selling prices.  Prices had dropped so precipitously
that producers were actually selling at production cost, without
making any profit.

   62.    These efficiencies did, however, allow for the
increased use of finished LCD in computer monitors and laptop
notebooks, flat panel televisions and cell phones.  Upon
information and belief, the average selling price of LCD rose
significantly from 2003 to 2004 largely because of collusion
among the Defendants.  During this period, Defendants agreed to

reduce supply in order to artificially raise prices.

63.    Defendants' collusion operated to stymie the decline in prices prior to 2003, such that they raised prices to supra-competitive levels.  By 2003, prices climbed.  For instance, the average price of LCD larger than 10 inches increased from $219 in the second quarter to $271 in the fourth quarter.  At the end of 2003, the market was valued at $33 billon, a significant increase from $29 billion in 2002.  This increasing average price of LCD continued to rise in 2004, hitting an all-time high.  According to industry analysts, the market was valued at $36 billion in 2004.  It was the collusive activity among the Defendants and their Co-Conspirators that kept the prices at supra-competitive levels and lead to the increase in value of the overall LCD market.

64.    The LCD industry has undergone significant consolidation throughout the Class Period, leading to substantially fewer LCD manufacturers in the market.  Examples of this consolidation include AU Optronics' acquisition of Quanta Display and the collaboration by industry leaders to create ventures such as S-LCD, Toshiba Matsushita Display Technology and Sanyo Epson Imaging Devices.

65.    The market for LCD products is large and steadily increasing in size.  For example, shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007,

24

which is a 6.3% increase from the 145.2 million units shipped during the latter half of 2006, and is a 23.7% increase from the first half of 2006.

66.    The United States Department of Justice ("DOJ") recently launched an investigation into anticompetitive practices by LCD manufacturers.  On or about December 8, 2006, the DOJ subpoenaed Defendants LG.Philips, Samsung, Sharp and Chi Mei Optoelectronics.  A spokesperson for the DOJ confirmed that an investigation is underway in the LCD industry and that the DOJ is cooperating internationally with other antitrust authorities. Several Defendants such as LG.Philips, Sharp and Samsung have acknowledged publicly that the DOJ has subpoenaed them about the LCD investigation.

67.    Authorities in the European Union, Japan, South Korea and Taiwan have launched similar probes in coordination with the DOJ investigation.  On December 12, 2006, the European Commission confirmed that it had sent formal requests for information to a number of LCD producers.  Japan's Fair Trade Commission also confirmed that it is investigating allegations of price-fixing against LG.Philips, Samsung, AU Optronics, Sharp, Seiko Epson, Toshiba Matsushita Display Technology, NEC, Hitachi, and IPS Alpha.  LG.Philips publicly acknowledged on December 11, 2006, that it is being investigated in various countries:  "[A]s part of an investigation of possible anticompetitive conduct in the

25

LCD industry, officials from the Korean Fair Trade Commission visited the offices of LG.Philips LCD in Seoul, Korea." Defendants Samsung, Sharp and Chi Mei Optoelectronics have also confirmed that they are under investigation by competition regulators overseas.

68.    Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the most recent conspiracy in the Dynamic Random Access Memory market and the alleged conspiracy in the Static Random Access Memory market.  Not surprisingly, many of the Defendants in these other cases are also implicated in this new investigation of the LCD industry such as Defendants Samsung and Toshiba.

## TRADE AND COMMERCE

69. The    activities    of    Defendants    and    their    Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of LCD throughout the United States, including Hawai'i.

70.    During the Class Period, Defendants manufactured, sold and shipped substantial quantities of LCD to manufacturing businesses and consumers throughout the United States, including Hawai'i.  Those businesses resold and/or incorporated the LCD into other products including, but not limited to, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital

personal assistants and digital music players and then sold those goods to businesses and consumers throughout the United States, including Hawai'i.

71.    The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of LCD throughout the United States, including Hawai'i.

72.    The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

> (a)    participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for LCD;
>
> (b)    participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for LCD;
>
> (c)    participating in meetings and conversations on a periodic basis during the Class Period, in which Defendants and their Co-Conspirators

27

discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply LCD and/or products containing LCD to various customers;

(d)  exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e)  issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f)  facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of LCD sold.

73.  For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

74.  The contract, combination, and conspiracy alleged herein had the following effects, among others:

(a)  prices paid by Plaintiffs and the Class members for LCD and products containing LCD were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

(b)  indirect purchasers of LCD and products containing LCD were deprived of the benefits of free and open competition; and

(c)  competition between and among

28

> Defendants and their Co-Conspirators in
> the sale of LCD and/or products
> containing LCD was unreasonably
> restrained.

75.  As a result, Plaintiffs and the Class members have
been injured in their businesses and property in that they were
not only deprived the benefits of fair and open competition on
the merits but have paid more for LCD and/or products containing
LCD than they otherwise would have paid in the absence of
Defendants' unlawful contract, combination, and conspiracy.

### FRAUDULENT CONCEALMENT

76.  Plaintiffs hereby incorporate by reference each of the
preceding paragraphs as if fully set forth herein.

77.  Throughout the Class Period, Defendants and their Co-
Conspirators engaged in a successful, illegal price-fixing
conspiracy that was by its nature self-concealing and further
effectively, affirmatively, and fraudulently Defendants'
concealed their unlawful combination, conspiracy, and acts in
furtherance thereof from Plaintiffs and the Class members.

78.  Although Plaintiffs exercised due diligence throughout
the Class Period, they could not have discovered Defendants'
unlawful scheme and conspiracy at an earlier date because of
Defendants' effective, affirmative, and fraudulent concealment
of their activities.  Defendants' wrongful conduct was carried
out in part through means and methods that were designed and

intended to avoid detection, and which in fact, successfully precluded detection.

79. Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of LCD to natural reasons such as seasonal ebb and flow and a highly competitive market. Defendants also instructed their United States entities to offer similar false reasons to explain price increases to customers in the United States, including Hawai'i. In fact, those fluctuations were due to Defendants periodic withholding of the supply of LCD to create an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

80. Plaintiffs and the Class members had no reason to disbelieve Defendants' explanations of the pricing behavior of these products. Indeed, in some instances Defendants' explanations involved proprietary or otherwise non-public information within Defendants' exclusive control, leaving Plaintiffs and the Class members without means to verify their accuracy. Plaintiffs did not know nor could they have known that Defendants' prices for LCD were artificially inflated and maintained by virtue of Defendant's illegal price-fixing conspiracy and that Plaintiffs and the other Class members were paying higher prices for LCD and/or products containing LCD than they would have paid in a competitive market.

81.  Plaintiffs exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent permitted by law.

### COUNT I
### (Violation of Chapter 480)

82.  Plaintiffs hereby adopt and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

83.  Beginning at least by January 1, 2002 and continuing until the present, the exact date being unknown to Plaintiffs, Defendants and their Co-conspirators committed actions that constitute unfair and deceptive trade practices in violation of H.R.S. §§ 480-1, *et seq.*, and substantially affecting trade or commerce throughout the United States, including Hawai'i.

84.  Each of the Defendants named herein, directly or indirectly and through affiliates, dominated, controlled, manufactured, sold and/or distributed LCD throughout the United States, including Hawai'i.

85.  During the Class Period, Defendants have engaged in illegal, anticompetitive practices including those described herein and/or combinations of capital, skill, and acts with others the intent, purpose and effect of creating and carrying out restrictions in trade and commerce; increasing the

31

price and limiting and reducing the supply of LCD; and
restraining trade and preventing competition in the relevant
markets of LCD products, thereby enabling Defendants to
perpetuate their monopoly.

86.  The aforesaid violations of H.R.S. §§ 480-1, *et seq.*,
consisted, without limitation, of a continuing unlawful trust
and concert of action among the Defendants and their Co-
Conspirators, the substantial terms of which were to fix, raise,
maintain and stabilize the prices of, and to allocate markets
for, LCD.

87.  For the purpose of forming and effectuating the
unlawful trust, Defendants and their Co-Conspirators have done
those things which they combined and conspired to do, including
but in no way limited to the acts, practices and course of
conduct set forth above and the following:

       (a)  to fix, raise, maintain and stabilize the price
           of LCD;

       (b)  to allocate markets for LCD amongst themselves;
           and

       (c)  to allocate amongst themselves the production of
           LCD.

88.  The combination and conspiracy alleged herein has had,
inter alia, the following effects:

       (a)  price competition in the sale of LCD has been
           restrained, suppressed, and/or eliminated in
           Hawai'i and throughout the United States;

(b)    prices for LCD sold by Defendants and their Co-
Conspirators have been fixed, raised, maintained
and stabilized at artificially high, non-
competitive levels in Hawai'i and throughout the
United States; and

(c)    those who indirectly purchased LCD have been
deprived of the benefit of free and open
competition in Hawai'i and throughout the United
States.

89.    Plaintiffs and the Class members paid supra-
competitive and artificially inflated prices for LCD and
products containing LCD.

90.    As a direct and proximate result of Defendants'
unlawful and anticompetitive practices, including combinations
and contracts to restrain trade and monopolize the relevant
markets, Plaintiffs and the Class members were injured in their
business and property in that they paid more for LCD than they
otherwise would have paid in the absence of Defendants' unlawful
conduct.  As a result of Defendants' violation of H.R.S. §§ 480-
1, *et seq.*, Plaintiffs, on behalf of themselves and the Class
members, seek threefold the amount of actual damages to be
proved at trial as a result of the wrongful conduct under H.R.S.
§§ 480-1, *et seq.*, plus attorney's fees and court costs as
provided in H.R.S. § 480-13.

## COUNT II
### (Unjust Enrichment and Disgorgement of Profits)

91.    Plaintiffs hereby adopt and incorporate by this
reference each of the preceding paragraphs as fully set forth

33

herein.

92.    Defendants benefited from their unlawful acts through the overpayment for LCD and products containing LCD by Plaintiffs and the Class members.    Under common law principles of unjust enrichment it would be inequitable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiffs and Class members and retained by Defendants.

93.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

### COUNT III
### (Violation of the Sherman Act for Injunctive Relief)

94.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

95.    Beginning by at least January 1, 2002 and continuing until the present, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for LCD in Hawai'i and the United States.

96.    Defendants' conduct in restraint of trade had the intent, and effect, of maintaining artificially high, and anticompetitive prices of LCD and/or products containing LCD.

97.  Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

98.  Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

99.  It is in the best interest of the public to enjoin, pursuant to the Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

100.  Plaintiffs and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and in violation of H.R.S. §§ 480-1, *et seq.*, in the absence of injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, Gail H. Awakuni and John Okita, pray for judgment against all Defendants, jointly and severally, and respectfully request that the Court:

1.   Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and

direct that reasonable notice be given to Class members;

2.    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

(a)  An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of Chapter 480 of H.R.S. §§ 480-1, *et seq.*, as set forth in Count I herein;

(b)  Acts of unjust enrichment as set forth in Count II herein; and

(c)  In violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.    Award Plaintiffs and the Class members threefold the amount of actual damages to be proved at trial as a result of the wrongful conduct alleged plus costs of suit, including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to H.R.S. §§ 480-13;

4.    Award Plaintiffs and the Class members restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

5.    Award Plaintiffs and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

6.    Award Plaintiffs and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

7.    Grant such other, further or different relief as the Court may deem just and proper.

DATED:  Honolulu, Hawaii, ___MAY 2 9 2007___ .

STEVEN K. HISAKA
GAIL Y. COSGROVE
KUNIO KUWABE
Attorneys for Plaintiffs
Gail H. Awakuni and John Okita, on
behalf of themselves and all
others similarly situated in the
State of Hawai'i